# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

In re: Jeremy Wallace Lord,

     Debtor.

Case No. 25-40397-7

_____

Ilene J. Lashinsky,
United States Trustee,

     Plaintiff,

v.

Jeremy Wallace Lord,

     Defendant.

Adversary Proceeding
No. 26-_____

---

## Complaint to Deny Discharge

---

## I.   Parties, Jurisdiction, and Venue

1.   Ilene J. Lashinsky is the United States Trustee for Region 20, which encompasses the District of Kansas.

2.   Under 11 U.S.C. §§ 307 and 727(c)(1), the United States Trustee has standing to bring complaints objecting to entry of discharge.

3.   Jeremy Wallace Lord ("the "Debtor") is the debtor in the underlying chapter 7 bankruptcy case.

4. Erin Lord is, and at all time relevant to this complaint was, the Debtor's wife.

5. Debtor and Erin Lord reside at 11965 SW 77th Street, Auburn, Kansas, 66402.

6. All Seasons Lawn, Tree, and Landscape, LLC is a Kansas limited liability company that is wholly owned by Debtor.

7. Darcy Williamson ("Willamson") is the duly appointed Chapter 7 Trustee in this bankruptcy case.

8. The United States Trustee brings this complaint under 11 U.S.C. § 727 and Fed. R. Bankr. P. 4004(d) and 7001(4).

9. Under 28 U.S.C. §§ 157 and 1334, 11 U.S.C. § 727, and D. Kan. R. 83.8.5, the Court has jurisdiction to hear this complaint.

10. Under 28 U.S.C. § 1409(a), venue properly lies in this Court.

11. Under Fed. R. Bankr. P. 7008, the United States Trustee consents to entry of a final order or judgment by the Bankruptcy Court.

12. The deadline to object to Debtor's discharge is May 29, 2026[1] and this complaint is therefore timely.

---

[1] Main Case Doc. #100.

## II. General Allegations

*Pre-Petition Events*

13.  On August 9, 2021, Kevin M. Cassidy, D.D.S., M.S., P.A. commenced a civil lawsuit against Lord in the Shawnee County District Court for the State of Kansas, Case No. 2021-LM-005794.

14.  On October 20, 2021, the Shawnee County District Court entered a default judgment against Lord and in favor of Cassidy.

15.  In August 2022, Debtor transferred approximately $380,000 to a joint bank account owned with Erin Lord.

16.  On September 1, 2002, Erin Lord used $233,404.44 of the bank deposits for the purchase of 56 acres of undeveloped real estate near Auburn, Kansas (the "Residential Property").

17.  At closing, the Residential Property was titled to Erin Lord only.

18.  After closing, the Debtor and Erin Lord financed the construction of a house on the Residential Property through a loan with Heritage Bank in the approximate amount of $640,000.

19.  On October 4, 2023, All Seasons commenced a lawsuit against Laura Cunningham and Matthew Cunningham d/b/a Cedar Crest

3

Lodge in the Linn County District Court for the State of Kansas, Case No. LN-2023-CV-000068.

20. On November 13, 2023, the Cunninghams filed an answer and counterclaim against All Seasons in the Linn County matter.

*Lord Files Bankruptcy with Fraudulent Schedules and Statements*

21. On June 20, 2025, Debtor commenced this case by filing a voluntary petition for Chapter 7 bankruptcy relief.

22. Debtor signed his bankruptcy schedules, statements, and related documents under the penalty of perjury.[2]

23. The Cassidy judgment remained unsatisfied as of the petition date.

24. Debtor did not list Cassidy as a creditor on his Schedule E/F.

25. Debtor did not list the Cassidy lawsuit in response to item 9 of his statement of financial affairs.

26. In response to item 17 of his Schedule A/B, Debtor listed an interest in only one deposit account consisting of a Heritage Bank checking account, X9962, which Debtor owned jointly with Erin Lord.

---

[2] Main Case Doc. #1.

4

27.  The Debtor scheduled X9962 account as having a balance of only $400 as of the petition date.

28.  In fact, the X9962 had $13,146.03 on deposit as of the petition date.

29.  Debtor also had an interest in accounts X3131 and X2246 with deposits, as of the petition date, of $7,091.21 and $22,514.99 respectively.

30.  Debtor did not schedule the X3131 and X2246 deposit accounts.

31.  On his Schedules I and J, Debtor lists $20,129.87 of monthly expenses relative to $21,666.67 of combined monthly income.

32.  Debtor's actual monthly income and expenses greatly exceed the amounts listed on Schedules I and J.

33.  Item 4 on the statement of financial affairs requires an individual debtor to disclose "any income from employment or from operating a business during this year or the two previous calendar years."

34.  In response to item 4 of the statement of financial affairs, Debtor listed only $320,000 in year-to-date, gross income from operating a business in 2025.

5

35.  Lord did not disclose any income at all for 2023 or 2024 in response to item 4 of the statement of financial affairs.

36.  In fact, Lord had substantial, undisclosed income in 2023 and 2024, including over $800,000 for 2024.

37.  Item 6 of the statement of financial affairs requires a debtor whose debts are primarily non-consumer to disclose payments made to any creditor in the aggregate amount of $8,575 or more during the 90 days before the petition date.

38.  Item 7 of the statement of financial affairs requires a debtor to disclose all payments made to insiders on account of debt in the one year before the petition date.

39.  Debtor made transfers exceeding $8,575 on account of antecedent debt to non-insiders Heritage Bank, White Star, and Mid-States Materials each during the 90 days immediately preceding the petition date.

40.  Debtor made transfers of money on account of antecedent debt to his insider mother-in-law, Dixie Riley, during the one year immediately preceding the petition date.

6

41. Debtor listed no transfers at all in response to items 6 and 7 of his statement of financial affairs.

42. Debtor made numerous, substantial cash withdrawals from his three deposit accounts during the two years immediately preceding the petition date but did not account for these transfers in response to item 18 of the statement of financial affairs.

43. On July 15, 2025, Williamson convened the first setting of the §341 meeting of creditors.

44. At the first meeting, Debtor testified under oath that he made multiple pre-petition transfers of money to Erin Lord.

45. The transfers by Debtor to Erin Lord include, but are not limited to, an April 2, 2025, transfer of $7,000 and an April 11, 2025, transfer of $9,000.

46. Lord did not list the transfers to Erin Lord in response to item 18 of his Statement of Financial Affairs.

47. At the first meeting, Williamson requested the Debtor amend his Statement of Financial Affairs to disclose the transfers to Erin Lord.

7

48. Debtor has not amended his Statement of Financial Affairs to disclose the transfers to Erin Lord despite knowing that the statement was inaccurate for at least ten months.

*Lord Abandons All Seasons's Corporate Form as the Cunninghams Obtain Judgment Against All Seasons and Begin Collection Proceedings*

49. On September 24, 2025, the Linn County Court entered a journal entry of judgment against All Seasons and in favor of the Cunninghams in the amount of $392,200.77.

50. On November 19, 2025, the Cunninghams obtained an order for garnishment directed to Heritage Bank on account of the All Seasons judgment.

51. On December 23, 2025, Heritage Bank submitted its answer of garnishment and indicated that it was in possession of All Seasons bank deposits in the amount of $34,791.96, exclusive of fees.

52. On January 28, 2025, Debtor filed a turnover motion seeking a return of the garnished funds.

53. In its motion, Debtor alleged that "although the garnishment was issued against an entity other than the Debtor, the evidence and testimony in the bankruptcy case has demonstrated that the business

8

operated as a sole proprietorship. The LLC did not own property or operate as an LLC."

*Lord's Turnover Motion Reveals More False Statements*

54. Even though Debtor contends that All Seasons is a sole proprietorship and not a separate legal entity, he did not list All Seasons as a "doing business as" name in response to item 2 of his voluntary petition.

55. Even though Debtor contends that All Seasons is a sole proprietorship and not a separate legal entity, Debtor did not schedule the Cunninghams as his creditors on his Schedule E/F.

56. Even though Debtor contends that All Seasons is a sole proprietorship and not a separate legal entity, he did not list his claim against the Cunninghams on Schedule A/B.

57. Even though Debtor contends that All Seasons is a sole proprietorship and not a separate legal entity, he did not disclose the Cunningham litigation in response to item 9 of his statement of financial affairs.

58. Debtor has not amended his Schedules and Statement of Financial Affairs to list the Cunninghams' claim and related litigation despite knowing that they were inaccurate for at least four months.

*Williamson Obtains an Order for Turnover of Records and Lord Does Not Comply*

59. On October 14, 2025, Williamson filed a turnover motion seeking entry of an order compelling Debtor to produce documents, information, cash, and property.[3]

60. On November 7, 2025, Debtor filed a response[4] to the turnover motion indicating that he would comply with the turnover motion and asking the Court to deny the motion as being moot.

61. On January 6, 2026, the Court heard arguments on the turnover motion and Debtor's response to the same.

62. On January 13, 2026, the Court entered an order granting Williamson's turnover motion.[5]

63. On January 15, 2026, the turnover order was served on Debtor at his residential address via first class mail.[6]

---

[3] Main Case Doc. No. 54.
[4] Main Case Doc. No. 57.
[5] Main Case Doc. No. 72.
[6] Main Case Doc. No. 73.

64. To date, Debtor has failed to fully comply with the January 13, 2026 turnover order.

65. Debtor has not provided Williamson with two years of account statements for Heritage Bank deposit accounts X2808, X8650, and X5029 as required by paragraph 6 of the turnover order.

66. Debtor has not provided Williamson with documents concerning the purchase of the residential property, construction of the home, and related mortgage payments as required by paragraphs 7(a) and 7(c) of the turnover order.

67. Debtor has not provided Williamson with documents concerning his transfers to Erin Lord or Erin Lord's contributions to the purchase of the residential property, construction of the house, or mortgage payments as required by paragraph 7(d) of the turnover order.

68. Debtor has not provided Williamson with his 2025 income tax returns as required by paragraph 8 of the turnover order.

69. Debtor has not provided Williamson with documents concerning his account with Reed Co. as required by paragraph 9 of the turnover order.

70. Debtor has not provided Williamson with All Season's operating agreement or 2023, 2024, and 2025 balance sheets and profit and loss statements as required by paragraph 10 of the turnover order.

71. Debtor has not provided Williamson with a copy of the answers filed in the various state court lawsuits referenced in his Statement of Financial Affairs as required by paragraph 11 of the turnover order.

72. Debtor has not provided Williamson with documents and information concerning pre-petition payments to business vendors as required by paragraph 12 of the turnover order.

73. Debtor has not provided Williamson with the bid sheet, Menards invoice, and other information concerning the Prochazka job as required by paragraph 13 of the turnover order.

74. Debtor has not provided Williamson with the documents detailing transfers between himself and Dixie Riley, including the $50,000 transfer to Dixie Riley referenced in the Statement of Financial Affairs, as required by paragraph 14 of the turnover order.

75. Debtor has not paid Williamson the $13,146.03 in non-exempt bank deposits from the X9962 account as required by paragraph 15 of the turnover order.

76. Debtor has paid Williamson only $5,500 of the $22,514.99 in non-exempt bank deposits from the X2246 account as required by paragraph 16 of the turnover order, leaving $17,014.99 due and owing.

77. Debtor has not provided Williamson with the invoices, receipts, and other documents concerning withdrawals from the X2246 and X9962 accounts during the previous three years, as required by paragraph 17 of the turnover order.

78. Debtor has not paid Williamson the pre-petition receivables collected post-petition or accounted for the same, as required by paragraph 18 of the turnover order.

79. Debtor has not provided Williamson with records related to his transfers of money or property to or for the benefit of Emily Lord during the last 3 years, as required by paragraph 20 of the turnover order.

80. The turnover order required Debtor to produce the responsive documents, information, and cash within 15 days.

81. The turnover order became effective upon entry under pursuant to Fed.R.Bankr.P. 9021.

82. More than 15 days have elapsed since the effective date of the order.

83.  The turnover order constitutes a valid and final, non-appealable order of this court.

*The 2004 Examination of Debtor Reveals Another False Oath and a Lack of Reasonably Adequate Recordkeeping*

84.  On January 27, 2026, Debtor appeared and testified under oath at a 2004 examination.

85.  At the 2004 examination, Debtor testified concerning a June 27, 2025, deposit in the amount of $14,000, as follows:

```
        Q.    So you got -- if that was from Ron Davis,
   you took money that was -- you had the contract
   before bankruptcy?
        A.    Yes.
        Q.    And you received money after filing
   bankruptcy from that pre-petition contract with
   Ron Davis --
        A.    I see where you're going.
        Q.    -- and deposited it, right?
        A.    Yeah.
```

86.  On June 27, 2025—two days after the petition date—Debtor collected two prepetition receivables in the amounts of $30,654.50 and $15,1000 which were deposited into the X2246 account.

87.  Debtor fraudulently listed no receivables on his Schedule A/B.

14

88. At the 2004 examination, Debtor testified concerning All Seasons's recordkeeping, as follows:

Q. All right. And did you always get an invoice for every payment you received?
A. No.
Q. And some customers paid you in cash, correct?
A. Yes.
Q. Do you know how many customers paid you in cash?
A. No.
Q. And did you have any method for keeping track of how -- of a customer paying you in cash?
A. No.

89. Debtor's recordkeeping was unreasonably inadequate.

## III. Claims for relief

### Count I: Denial of discharge under 11 U.S.C. § 727(a)(6)(A) (Refusing to obey lawful orders of the Court)

90. The United States Trustee incorporates all other paragraphs of this Complaint.

91. Debtor has refused to comply with a lawful order requiring him to produce documents to Williamson.

15

92. As a result, under 11 U.S.C. § 727(a)(6)(A), Lord should be denied a discharge.

### Count II: Denial of discharge under 11 U.S.C. § 727(a)(4)(D) (Knowing and Fraudulent Withholding of Records)

93. Williamson is an officer of the estate who has a statutory duty to investigate Debtor's financial affairs pursuant to 11 U.S.C. §704(a)(4).

94. Debtor has a duty to cooperate with Williamson and provide her with financial records pursuant to 11 U.S.C. §521(a)(3) and (4).

95. Lord has knowingly and fraudulently withheld from Williamson records that are responsive to the turnover order.

96. The Debtor's withholding of records from Williamson has impaired her ability to investigate Debtor's assets and avoidable transfers.

97. As a result, under 11 U.S.C. § 727(a)(4)(D), Debtor should be denied a discharge.

### Count III: Denial of discharge under 11 U.S.C. § 727(a)(3) (Concealment of or failure to keep documentation)

98. The United States Trustee incorporates all other paragraphs of this Complaint.

99. Debtor has unreasonably concealed or failed to keep the records responsive to the turnover order.

100. As a result, under 11 U.S.C. § 727(a)(3), Debtor should be denied a discharge.

### Count IV: Denial of discharge under 11 U.S.C. § 727(a)(4)(A) (Knowing and Fraudulent False Oaths)

101. As set forth above, Debtor knowingly and fraudulently, in connection with this bankruptcy case, made numerous false statements on his bankruptcy schedules and statement of financial affairs concerning his income, expenses, transfers, litigation, the identity of creditors, and assets including receivables and bank deposits.

102. Debtor's false statements were material because they concerned his financial dealings.

103. As a result, under 11 U.S.C. § 727(a)(4)(A), Debtor should be denied a discharge.

## IV. Conclusion

The United States Trustee asks that this Court enter judgment under 11 U.S.C. § 727(a)(6)(A), (4)(D), (a)(3), and (a)(4)(A), denying a discharge to debtor Jeremy Lord, awarding the costs of bringing this complaint, and granting any other relief the Court finds appropriate.

17

Respectfully submitted,

ILENE J. LASHINSKY,
UNITED STATES TRUSTEE

/s/ John W. Nemecek
John W. Nemecek
Trial Attorney
Admitted in Michigan, P71371
Appearing under 28 U.S.C. § 515(a)
301 North Main Street, Suite 1150
Wichita KS 67202
Telephone: (202)557-5810
Email: john.nemecek@usdoj.gov

18